UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EVETTE G.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-01073-MJD-SEB |
| | ) | |
| KILOLO KIJAKAZI,[2] | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Claimant Evette G. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

### I.  Background

Claimant applied for DIB and SSI in October 2018, alleging an onset of disability as of June 27, 2017. [Dkt. 14-5 at 2.] After Claimant's applications were denied initially and again

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

upon reconsideration, a telephonic hearing was held before Administrative Law Judge Daniel J. Mages ("ALJ") on August 19, 2020. [Dkt. 14-2 at 30-54.] On September 16, 2020, ALJ Mages issued his unfavorable determination that Claimant had not been under a disability from June 27, 2018, through the date of his decision. [Dkt. 14-2 at 24.] The Appeals Council then denied Claimant's request for review on March 1, 2021. [Dkt. 14-2 at 2.] On April 29, 2021, Claimant timely filed her Complaint seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[3] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is

---

[3] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.   ALJ Decision

ALJ Mages first determined that Claimant had not engaged in substantial gainful activity since June 27, 2017. [Dkt. 14-2 at 15.] At step two, the ALJ found that Claimant had the following severe impairments: "pes planus and plantar fasciitis of the right foot; a history of a right talar fracture; a history of a left ankle fracture; degenerative joint disease in the left shoulder; degenerative disc disease in the cervical, thoracic, and lumbar spine; obesity; bilateral carpal tunnel syndrome; depression; and anxiety." [Dkt. 14-2 at 15.] At step three, the ALJ found that Claimant's impairments did not meet or medically equal a listed impairment during the

relevant time period. [Dkt. 14-2 at 16.] ALJ Mages then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC") to

> perform a range of light work (20 CFR 404.1567(b) and 416.967(b)) defined as follows: sitting up to thirty minutes at one time and four hours during an eight-hour workday; standing and walking up to thirty minutes at one time and four hours during an eight-hour workday; lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; no work around dangerous moving machinery or at unprotected heights; frequent fingering, handling, and reaching bilaterally; no vibrating tools; frequent flexion, extension, and rotation of the neck; simple routine tasks with the ability to sustain the attention, concentration, persistence, and pace needed to complete those tasks; and occasional interaction with the public, coworkers, and supervisors.

[Dkt. 14-2 at 18.]

At step four, the ALJ found that Claimant was unable to perform any of her past relevant work during the relevant time period. [Dkt. 14-2 at 22.] At step five, relying on testimony from a vocational expert ("VE"), ALJ Mages determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as small product assembler, mail room clerk, and shipping and receiving weigher. [Dkt. 14-2 at 23.] Accordingly, the ALJ concluded that Claimant was not disabled. [Dkt. 14-2 at 24.]

### IV.  Discussion

Claimant advances two reasons why the Court should reverse the Commissioner's decision. She argues that (1) substantial evidence does not support the ALJ's decision that Claimant was capable of performing other work at Step Five; and (2) the ALJ's RFC does not incorporate Claimant's moderate limitations in interacting with others and maintaining concentration, persistence, or pace. [Dkt. 16.] In response, the Commissioner asserts that the ALJ based his decision on substantial evidence and thus both of Claimant's arguments are without merit. [Dkt. 17.] As explained below, the Court agrees with the Commissioner.

### A. Substantial Evidence Supports the ALJ's Determination that Claimant Could Perform Other Work at Step Five

Claimant first argues that the ALJ's decision regarding her ability to perform other work is unsupported by substantial evidence on the ground that the ALJ failed to explain the discrepancy between the standard definition of light work, requiring six hours of standing and walking in a workday, and Claimant's limitation to only four hours of standing and walking in a workday. [Dkt. 16 at 17-18.] However, the ALJ expressly noted in his RFC that Claimant could "perform **a range** of light work," limited by "sitting up to thirty minutes at one time and four hours during an eight-hour workday" and "standing and walking up to thirty minutes at one time and four hours during an eight-hour workday." [Dkt. 14-2 at 18] (emphasis added). This practice is not unusual; an ALJ may appropriately adopt a certain exertional level while ruling out particular jobs within that level with the advice of a vocational expert. *See*, *e.g.*, *Chavez v. Berryhill*, 895 F.3d 962, 964 (7th Cir. 2018) ("[T]he ALJ determined that [the claimant] could perform a limited range of light work"); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) (the ALJ found that the claimant "was capable of performing more than the full range of sedentary work, but less than a full range of light work, due to standing and walking restrictions"). Although "the **full range** of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," SSR 83-10, 1983 WL 31251, at *6 (emphasis added), the ALJ's determination that Claimant could perform a **limited range** of light work is not the kind of discrepancy that requires reversal. Moreover, it is supported by the VE's testimony.

At the hearing, the VE testified that an individual with Claimant's ultimate RFC—except that the individual could sit for six hours during an eight-hour workday and stand/walk for six hours during an eight-hour workday—could perform work as a laundry worker (DOT 302.685-

010; 84,000 positions in the national economy), mailroom clerk (DOT 209.687-026; 75,000 positions in the national economy), and shipping and receiving weigher (DOT 222.387-074; 29,000 positions in the national economy). [Dkt. 14-2 at 51-52.] When the ALJ limited the hypothetical individual to sitting up to 30 minutes at a time for four hours total and standing/walking up to 30 minutes at a time for four hours total, the VE testified that such a limitation "would rule out the laundry worker position, but it would allow for the other two." [Dkt. 14-2 at 53.] The VE then offered an alternative position of a small product assembler (DOT 706.684-022; 230,000 positions in the national economy) but, based on her professional experience, reduced the number of jobs in the national economy "by half to accommodate the sitting and standing parameters" of the hypothetical. [Dkt. 14-2 at 52.] Based on this testimony, the ALJ concluded that Claimant could work as a small product assembler (DOT 706.684-022; 115,000 positions in the national economy), mail room clerk (DOT 209.687-026; 75,000 positions in the national economy), and shipping and receiving weigher (DOT 222.387-074; 29,000 positions in the national economy). [Dkt. 14-2 at 23.] Therefore, the ALJ's determination that Claimant could perform other work, even with the sitting/standing/walking limitation, is not erroneous because it is supported by substantial evidence.[4]

---

[4] Claimant additionally argues that the VE's decision to reduce the number of small product assembler jobs in half due to the aforementioned sitting/standing/walking limitation is not based on substantial evidence. [Dkt. 16 at 18.] Although the VE stated that this reduction was based on her professional experience, it is true that no other explanation was provided and thus "[n]othing in the record enables us to verify those numbers, which the administrative law judge accepted." *Herrmann v. Colvin*, 772 F.3d 1110, 1114 (7th Cir. 2014). That said, any error at this specific junction is harmless because the VE provided two additional occupations that Claimant could perform, each existing in significant numbers in the national economy.

### B. The ALJ's RFC Determination Properly Incorporates Claimant's Mental Functioning Limitations

Claimant additionally argues that the ALJ's RFC fails to incorporate Claimant's moderate limitations in both interacting with others and maintaining concentration, persistence, or pace. [Dkt. 16 at 19.]

ALJ Mages found that Claimant was moderately limited in interacting with others and moderately limited in concentrating, persisting, or maintaining pace. [Dkt. 14-2 at 17.] His RFC determination then limited Claimant to "simple routine tasks with the ability to sustain the attention, concentration, persistence, and pace needed to complete those tasks" and "occasional interaction with the public, coworkers, and supervisors." [Dkt. 14-2 at 18.] While there is a line of Seventh Circuit caselaw holding that confining claimants to routine tasks and limited interactions with others might not adequately capture a claimant's moderate limitations in concentration, persistence, or pace, *see Gregory B. v. Kijakazi*, 2021 WL 5563710, at *5 (S.D. Ind. Nov. 29, 2021) (collecting cases), an ALJ may nonetheless "reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination." *Burmester*, 920 F.3d at 511. That is the case here. State agency consultants S. Hill, Ph.D., and Kenneth Neville, Ph.D., both opined that

> [t]he evidence suggest that claimant can understand, remember, and carry out detailed, but not complex tasks. The claimant can relate on a superficial and ongoing basis with co-workers and supervisors. The claimant can attend to tasks for a sufficient period to complete tasks. The claimant can manage the stresses involved with detailed work-related tasks.

[Dkt. 14-3 at 20, 47.] The ALJ then incorporated this narrative into his RFC determination and presented those limitations to the VE. *See* [Dkt. 14-2 at 51]. There is no error here.

To the extent that ALJ Mages found the opinions of Dr. Hill and Dr. Neville were "not persuasive," [Dkt. 14-2 at 22], the ALJ explained that it is because he found Claimant to be more

restricted than the agency psychologists did in certain areas.[5] Indeed, Dr. Hill and Dr. Neville found that Claimant was only mildly limited in interacting with others, [Dkt. 14-3 at 16, 43], which the ALJ notes "was not consistent with the medical record" because "the claimant's mood and affect were noted as anxious, depressed, tearful, nervous, bunted, constricted, sad, angry, and withdrawn," and she "had limited insight." [Dkt. 14-2 at 22.] ALJ Mages thus deviated from the State agency opinions and found that Claimant was moderately limited in her ability to interact with others. [Dkt. 14-2 at 17]; *see Burmester*, 920 F.3d at 510 (finding that "reasoned consideration" was given to the evidence presented by the claimant where an ALJ's RFC determination "was more limiting than that of any state agency doctor or psychologist"). In doing so, the ALJ provided the requisite "logical bridge" between the evidence and his conclusions. *Varga*, 794 F.3d at 813.

Claimant maintains that the evidence suggests she was more limited than the ALJ found, especially with regard to her ability to stay on task. The ALJ explained:

> Overall, the record as a whole contains minimal objective findings related to the claimant's mental impairments, which is not reflective of the limitations alleged. There was evidence the claimant's mood and affect were noted as anxious, depressed, tearful, nervous, blunted, constricted, sad, angry, and withdrawn (Exs. 1F/4, 8; 5F/10; 6F/5, 6; 8F/4; 12F/4, 16). However, she reported her medications were helpful (Exs. 6F/4; 8F/4; 12F/11). The claimant generally had normal mental status findings (Exs. 1F/4, 5, 7, 8; 2F/16; 4F/19; 5F/4, 10; 6F/5, 6; 7F/13; 8F/4; 12F/3, 4). Therefore, I have provided for the claimant's mental impairments in the assigned residual function capacity. Her being off task is not supported by the evidence of record.

[Dkt. 14-2 at 21.] Claimant even recognizes that, despite finding Claimant had "abnormal affect, fair insight, loud speech, and circumstantial thoughts," neither of her mental health providers

---

[5] Considering ALJ Mages utilized the State agency consultants' narrative findings to craft Claimant's RFC, his credibility determination of those opinions is perhaps better characterized as "partially persuasive," rather than "not persuasive." Nonetheless, the ALJ explains his findings well enough for the Court to trace his reasoning.

addressed her concentration. [Dkt. 16 at 21.] ALJ Mages reasonably explained his decision and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Burmester*, 920 F.3d at 510.

At bottom, the ALJ considered the record as a whole and appropriately evaluated the medical opinions to arrive at his determination regarding Claimant's mental functioning limitations. The ALJ then incorporated those limitations into Claimant's RFC. There is no basis for remand.

## V.   Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

SO ORDERED.

Dated:  21 MAR 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the Court's ECF system.